OPINION
Appellant Tanja Hupp appeals the March 9, 1999 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, awarding permanent custody of her minor children to appellee Stark County Department of Human Services ("SCDHS") and terminating all of appellant's parental rights, privileges, and responsibilities.
 STATEMENT OF THE FACTS AND CASE
On November 13, 1997, SCDHS filed a complaint for temporary custody in the Stark County Court of Common Pleas, Juvenile Division, alleging Patricia Hupp (DOB 5/10/90), David Hupp (DOB 10/22/91), Christine Hupp (DOB 9/3/92), and Donna Hupp (DOB 11/12/93) were neglected and/or abused children. SCDHS assumed custody of the children pursuant to Juv. R. 6 as a result of the deplorable conditions in which the children were living. Additionally, David Hupp, the father of the children, who was ordered by the court to have no contact with his children due to a conviction for sexual perpetration against an unrelated boy, had repeatedly violated the order with appellant's consent. At the emergency shelter care hearing on November 13, 1997, appellant stipulated probable cause existed for the issuance of an emergency shelter care order and the placement of the children into shelter care pending further hearing. Attorney Susan Burns was appointed Guardian ad Litem for the children. An adjudicatory hearing and the dispositional hearing were held on February 9, 1998. After hearing evidence, the trial court found David to be an abused child and found all four children to be neglected children. The trial court granted SCDHS temporary custody of the children. The trial court approved and adopted SCDHS's case plan for appellant, which required her to:
 1) have a psychological evaluation and follow the recommendations of the counselor;
2) obtain and maintain independent housing; and
3) enroll in and complete Goodwill Parenting classes.
On June 29, 1998, SCDHS filed a Motion for Permanent Custody. The complaint was based upon appellant's failure, despite the availability of extensive services, to remedy the conditions which caused the removal of the children from her home. Specifically, appellant failed to substantially comply with her case plan. Appellant had been terminated from Goodwill Parenting classes on two occasions, failed to maintain adequate housing for the children, and lacked steady employment. The trial court conducted a trial on the motion on January 25, 1999. At trial, appellant admitted she had not maintained stable housing during the pendency of the case. Appellant stated she had resided at approximately five different addresses during the last eighteen months. At the time of trial, appellant lived with her mother, her sister, and her boyfriend at her mother's residence in Louisville, Ohio. Appellant had lived at the Louisville address for approximately three months. Appellant testified she did not pay her mother rent, but took care of her mother due to her mother recently undergoing the amputation of one of her legs. Appellant acknowledged the current living arrangement was not acceptable for the children due to the size of the home and appellant's history of abuse by her stepfather, who was frequently at the Louisville residence. Although she was aware her case plan required her to obtain and maintain independent housing, appellant conceded she had not yet achieved that goal and had not made efforts to do so. With respect to her employment history, appellant testified one and half months was the longest time period in which she had been employed by a single employer during the pendency of the case. As of the date of the trial, appellant was not employed and it had been approximately three months since her last employment. Although she stated she intended to find a job, appellant acknowledged she had made no efforts to start any job training program or checked into such a program. Appellant also recognized attending parenting classes and counseling were goals of her case plan. At the time of the trial, appellant had completed nine weeks of her third involvement with Goodwill Parenting. Appellant was terminated from her first two involvements due to excessive absences. Appellant agreed she needed to work in the area of disciplining the children. Carol Hershey, a parenting instructor and case manager with Goodwill Industries, testified she is the parenting instructor for appellant's current parenting classes. With respect to appellant's attendance, Hershey testified she asked appellant to sign a behavior contract due to appellant's having three unexcused absences. Arrangements were made for appellant to be transported to the classes with another individual in the class. This individual had not missed the three classes appellant had missed. Hershey noted appellant had minimal contact with the children during supervised visits. Appellant watched the children play independently, rather than interact with them. Although Hershey and her staff gave appellant practical ideas for disciplining the children, Hershey had not observed appellant utilizing such methods. During the visits, appellant appeared overwhelmed and frustrated. Hershey described appellant as reactive in terms of her daily activities as a parent and voiced concerns about appellant's failure to correct a problem without first receiving direction from someone. Hershey further testified appellant rarely participated in class and, even when prompted, appellant was nonresponsive and unmotivated. Pat Johnson, the SCDHS family service worker assigned to appellant's case, testified appellant had not been able to maintain independent housing. Johnson noted appellant had always been transient, living with friends or relatives, and at one point, the YWCA because she was completely homeless. Throughout Johnson's involvement with appellant, appellant had not maintained stability in her employment. Johnson related her discussions with appellant regarding the importance of the Goodwill Parenting classes. At the time of the January 25, 1999 hearing, appellant was twice dismissed from the Goodwill Parenting classes due to excessive absences. Johnson acknowledged appellant is in counseling at Catholic Community Services. Johnson also testified regarding her observations of appellant during visits with the children at Harmony House. Johnson stated the children neither cried nor physically clung to appellant at the conclusion of the visits. The children displayed behaviors which indicated they never had to listen to appellant and appellant had no influence over their behavior. When appellant tried to discipline the children, they laughed at her or ran away from her. Johnson described their behavior as "completely out of control." During these visits at Harmony House, Johnson had to monitor the children so they would stay with appellant, rather than join other children who were visiting their parents. Appellant failed to prepare or plan any activity for her visits with the children. Johnson never observed appellant disciplining the children without first being prompted to do so. Although the children behaved with their foster family in a manner similar to their behavior with appellant, such behavior did not reach the same level and the children could be brought quickly back into control with intervention from a caregiver. Away from appellant, the children responded to direction and discipline. Johnson noted an improvement in appellant's appearance, but expressed concerns regarding her overall grooming and hygiene. Johnson explained appellant's appearance would be an indicator of her ability to maintain clean conditions for the children. The trial court conducted the best interest hearing on February 24, 1999. Johnson testified the four children, all of whom were caucasian, ranged in age from five years old to eight and half years old. The children were placed together in a foster family who was considering adopting all of them. Additionally, another family expressed an interest in adopting the children. With respect to Patricia, the oldest child, Johnson stated she had no known physical or mental disabilities, but did have some emotional problems, which were being addressed by the agency and her foster parents. Patricia's emotional problems have not precluded her ability to function in school. Patricia appears to be developmentally on target. The second child, David, demonstrated a lot of developmental delays and many behavioral problems when he first entered the system, but, after being placed on medication and attending counseling, he was progressing nicely. Although he has intellectual delays, David is enrolled in mainstream classes. He also receives personal assistance. The third child, Christina, does not suffer from any kind of physical disability, but does appear to have some developmental delays. When SCDHS began its involvement with the children, Christina received Head Start Services. Her caseworker anticipated she would be able to satisfactorily complete kindergarten next year. The youngest child, Donna, suffers from petit mal seizures and is currently on medication. Donna's activities have not been limited by this disability. Donna is also attending Head Start and may have some developmental delays. Johnson testified all four children are adoptable. Throughout the pendency of the case, the children have had no contact with their father. Describing appellant's visits with the children, Johnson testified the visits "very quickly would become out of control." Appellant was unable to discipline the children, and if she attempted to do so, the children would ignore her or run around and grab her or hit her. Appellant never initiated an activity with the children without first being prompted to do so. At the conclusion of the visits with appellant, the children separated easily and willingly. Johnson noted, both before and after visits with appellant, the children's behavior became disturbed. The children acted out and bicker amongst themselves. Johnson also stated, subsequent to the last court hearing on January 25, 1999, appellant had been dismissed from Goodwill for the third time due to her lack of attendance. Based upon the foregoing evidence, the trial court found it was in the best interests of the children to terminate appellant's parental rights, privileges, and responsibilities, and to grant permanent custody of the children to SCDHS. The trial court memorialized its decision via Judgment Entry filed March 9, 1999. It is from this judgment entry appellant appeals, raising the following assignments of error:
 I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
Any other facts relevant to our discussion of appellant's assignments of error shall be contained therein.
 I, II
Because our analysis of appellant's assignments of error are interrelated, we shall address said assignments together. In her first assignment of error, appellant maintains the trial court's finding the minor children could not or should not be placed with appellant within a reasonable time was against the manifest weight and sufficiency of the evidence. In her second assignment of error, appellant contends the trial court's finding it was in the best interests of the minor children to grant permanent custody to SCDHS was against the manifest weight and sufficiency of the evidence. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279. The relevant statute is R.C. 2151.41.4, which provides, in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
* * *
In determining the best interest of a child, R.C. 2151.41.4(D) states:
 (D) . . . the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
We find the trial court's finding it was in the children's best interests to grant SCDHS's motion for permanent custody is not against the manifest weight of the evidence. Pat Johnson testified the children are living in a foster home and the foster family is considering adopting all four children. Additionally, another family has expressed an interest in adopting all four children. The only child to show any physical disability is Donna, who suffers petit mal seizures, however, with medication, the seizures are controlled. David suffers from developmental delays and behavioral problems, and these problems are being addressed with positive outcome. Likewise, Christina suffers from some developmental delays, but is also improving with special assistance. Johnson did not note any strong bonding between appellant and the children. However, a best interest determination is not sufficient to grant permanent custody of a child to an agency and divest a parent of parental rights. R.C. 2151.41.4(E) governs a trial court's decision as to whether or not a child cannot or should not be placed with either parent and requires the trial court to consider all relevant evidence. R.C. 2151.41.4(E) provides, in pertinent part:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.35.3 [2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of section or for the purposes of division (A)(4) of section 2151.35.3 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child t be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home * * *
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
* * *
(12) Any other factor the court considers relevant.
In its March 9, 1999 Findings of Fact and Conclusions of Law, incorporated by reference into the March 9, 1999 Judgment Entry, the trial court reviewed appellant's compliance with her case plan. The trial court found appellant had been enrolled in the Goodwill Parenting program on three separate occasions, but on each occasion was dismissed for excessive absences. The court noted appellant's inability to utilize and implement the strategies and techniques taught to her during the parenting classes. Additionally, the trial court found appellant had not obtained independent housing as required by the case plan. At the time of the January 25, 1999 hearing, appellant was residing with her mother, her sister, and her boyfriend. The trial court found the current living arrangement inappropriate because of the size of the residence and concerns appellant's stepfather is abusive. The trial court also found appellant was unable to maintain stable employment, noting her longest employment lasted only one and one half months. Appellant acknowledged she failed to investigate job training programs. Appellant also acknowledged she failed to make any efforts toward her case plan during the first twelve months of the proceedings. Based upon the foregoing, we find the trial court's finding it was in the Hupp children's best interests to grant permanent custody to SCDHS and finding the children could not be placed with appellant within a reasonable period or should not be placed with appellant are not against the manifest weight or the sufficiency of the evidence. Appellant's first and second assignments of error are overruled.
The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By: HOFFMAN, J. GWIN, P.J. and FARMER, J. concur